UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| HYUNDAI ELECTRIC & ENERGY SYSTEMS CO., LTD.,<br><br>     Plaintiff,<br>v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br>and<br><br>HITACHI ENERGY USA INC. AND PROLEC-GE WAUKESHA, INC.<br><br>     Defendant-Intervenors. | Court No. 20-00108<br><br>**NON-CONFIDENTIAL**<br>Business Proprietary Information has been deleted from Pages 9 and 11. |

**PLAINTIFF'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Plaintiff Hyundai Electric & Energy Systems Co., Ltd. ("Hyundai") hereby submits comments in opposition to the final results of redetermination by the Department of Commerce ("Department"). *See Final Results of Redetermination Pursuant to Court Remand* (Aug. 15, 2022) (ECF 106) ("*Redetermination*"); *Hyundai Electric & Energy Systems, Co., Ltd. v. United States*, CIT No. 20-00108, Slip Op. 22-42 (May 10, 2022) ("*Remand Order*").[1]

**I. BACKGROUND**

In the *Remand Order*, the Court directed the Department to "reconsider or further explain" two elements of the final results for the sixth administrative review ("POR6 Review"):

---

[1] References to underlying record documents use the abbreviated names from Hyundai's initial brief (ECF 88, 89) ("Pl. Br.") and reply brief (ECF 90, 91) ("Reply Br.").
The record from the underlying review is referenced with "C.R." ("confidential record") and "P.R." ("public record"); the remand record is referenced with "R.C.R." ("remand confidential record") and "R.P.R." ("remand public record").

(1) "its determination to use facts available with respect to HEES's reporting of . . . contested part(s)" of large power transformers ("LPTs") in its home-market sales reporting; and (2) its reliance on total adverse facts available ("AFA") "to determine HEES's margin in accordance with this opinion{.}" *Remand Order* at 35.

In its draft *Redetermination*, the Department "reconsidered" its "determination with respect to the parts in question" and found that it did not "have a sufficient basis on the record to determine that Hyundai misclassified these parts" and, therefore, could not justify the application of facts available with respect to this issue. *Draft Results of Redetermination Pursuant to Court Remand* (July 20, 2022) (R.P.R. 1) at 8 ("*Draft Redetermination*"). However, the Department continued to apply total AFA to Hyundai on the grounds that Hyundai had not: (1) submitted certain documentation related to service-related revenue ("SRR"); and (2) reported the sale of an LPT that the Department believed was produced in Korea. *See id.* at 9-12. The Department stated that it was "unable to calculate an accurate margin, including application of our capping policy, absent a complete U.S. sales database and reporting of revenues." *Id.* at 9.

In comments to the Department, Hyundai argued that this finding was unreasonable. *See generally Large Power Transformers from Korea: Comments on the Department's Draft Results of Redetermination Pursuant to Court Remand*, July 25, 2022 (R.C.R. 1/R.P.R. 2). Specifically, Hyundai explained that any SRR missing from the record concerned a limited, discrete category of information, and did not justify the use of total AFA. *See id.* at 4-6. Hyundai further explained that a single, allegedly omitted sale did not undermine its entire US sales database. *See id.* at 6-10. Finally, Hyundai demonstrated that the combination of these two issues together did not justify the use of total AFA. *See id.* at 10-11. The Department made no changes in its final *Redetermination*. *Compare Draft Redetermination* at 8-12 *with Redetermination* at 9-14.

II.    **ARGUMENT**

    A.    **The Department's Continued Application of Total AFA is Not Supported by Substantial Evidence and is Contrary to Law**

The conclusions set forth in the *Redetermination* are unsupported by substantial evidence and are contrary to law, as the Department has mischaracterized the record and misapplied the legal standard for the application of total AFA. *See Redetermination* at 9-14. The Department's responses to Hyundai's arguments are likewise unreasonable. *See id.* at 16-21. The Court should therefore reject the continued application of total AFA as a result of the Department's findings with respect to SRR documentations and the single LPT and remand again to the Department with instructions to apply partial AFA.[2]

    1.    **Legal standard for the application of total AFA**

This Court has stated, and the Court of Appeals for the Federal Circuit ("Federal Circuit") has affirmed, that "total AFA is appropriate {only} 'where ***none of the reported data is reliable or usable***' because, for example, all of the submitted data exhibited pervasive and persistent deficiencies that cut across all aspects of the data." *Mukand, Ltd. v. United States*, CIT No. 11-00401, Slip Op. 13-41 at 12-13, *aff'd* 767 F.3d 1300, 1307-08 (Fed. Cir. 2014) (emphasis added, citations omitted). Conversely, partial AFA may be used "when the deficiency is only 'with respect to a discrete category of information.'" *Id.* (citations omitted). The SRR documentation and the single LPT do not constitute deficiencies that are so "pervasive and persistent" (either singly or in combination) as to render the entirety of Hyundai's data unreliable or unusable.

---

[2] For the record, Hyundai respectfully disagrees with the Court's affirmance of the application of AFA with respect to SRR and the LPT and reserves its right to appeal them.

### 2. The omission of certain SRR documentation relates to a limited, discrete category of information

The Department begins by noting that the lack of certain SRR documentation precludes it from applying its capping methodology, and that this Court has affirmed the use of AFA "in previous segments of this proceeding when Hyundai failed to provide information necessary for Commerce to apply its capping methodology. . . ." *Redetermination* at 10 (quoting *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1221 (Ct. Int'l Trade 2018) (internal quotation marks omitted). Importantly, however, in that case (the "POR2 Appeal"), the Department found and the Court affirmed that only *partial* AFA was justified with respect to missing SRR information. *See ABB Inc. v. United States*, 437 F. Supp. 3d 1289, 1300-01 (Ct. Int'l Trade 2018). The Department attempts to distinguish the facts in the POR2 Appeal from this appeal on the grounds that the lack of documentation "affects more than just a discrete calculation in this review, it also impacts Commerce's overall ability to calculate an accurate dumping margin." *Redetermination* at 10. The Department's attempt to bootstrap the overall dumping margin calculation onto the SRR issue does not support total AFA.

First, the role of capping in the dumping margin calculation has not changed since the POR2 Appeal. Thus, it cannot be that missing SRR information justified only partial AFA in one review, but total AFA in another. The Department seeks to differentiate the POR6 Review by claiming that it "was not able to verify the total quantity and value of the reported U.S. sales." *Redetermination* at 17. This conclusion is disproven by record evidence, including explicit, contrary statements by the Department. At the Korea sales verification, the Department reconciled Hyundai's US sales to its income statement and trial balance to "arrive{} at the quantity and value of transformers entered during the POR." *Korea Verification Report* at 13. Moreover, the CEP Verification Report states that, aside from the missing SRR documentation,

4

the Department "found *no discrepancies* with the reported transaction-specific sales information. . . ." *CEP Verification Report* at 13 (emphasis added).  Consequently, the Department's claim that it could not verify Hyundai's US sales is contradicted by the record and does not justify the use of total AFA in this case, when only partial AFA was used in the POR2 Review.[3]

Second, that SRR affects the calculation of the overall dumping margin does not transform the discrete issue of SRR reporting, affecting a limited element of the overall calculation, into a global issue that is so pervasive as to justify disregarding all of the other correctly reported and verified data.  Every value and expense field in the sales databases used in every investigation or review affects the calculation of the dumping margin.  Nevertheless, the Department has recognized and the Courts have found that it is inappropriate to disregard all data because of errors or omissions that affect one element of the data (*e.g.*, Hyundai's reporting of SRR in POR2).  And, as noted above, the Department verified all of the sales data aside from SRR, finding no discrepancies.  *See id.* at 5-8, 11-14.  The Department claims that because Hyundai "did not provide the value" for the SRR in question, nor "explain whether such revenues" were included or excluded from its US prices, all other data is useless.

---

[3] Additionally, as in the review underlying the POR2 Appeal, the Department reviewed and collected the SRR documents, containing the missing information, for certain sales at verification.  *See CEP Verification Report* at 13 (explaining that verification exhibits concerning SEQUs 3 and 12 include "the revenue and expense allocation document that we uncovered in Completeness Test 1"); *see also ABB Inc. v. United States*, 437 F. Supp. 3d 1289, 1298-1300 (Ct. Int'l Trade 2020) ("During verification, Commerce examined documentation for several sales and found invoices breaking out service-related revenues that had not been reported separately as Commerce had instructed").

*Redetermination* at 18. This is unreasonable, and is exactly why the Court and the Department have refused to apply total AFA in other, analogous situations.[4]

Third, the Department's statement in the *Redetermination* that the lack of SRR documentation affects "more than just a discrete calculation in this review" misstates the relevant legal test. Partial AFA is appropriate where the missing information is limited to a discrete ***category*** of information – which is exactly the case here. SRR is one category of information, among others, used to determine the gross unit price and calculate the dumping margin. The Department has not found – nor is there anything on the record indicating – that the remainder of Hyundai's submitted sales data are incomplete or inaccurate. The record does not support the conclusion that "***none*** of the reported data is reliable or usable," nor that the reporting of SRR is a "***pervasive and persistent***" deficiency that cuts "across all aspects of the data." The *Redetermination* fails to establish this crucial fact, but makes only the conclusory statement that "the failure was not discrete; rather, it was pervasive." *Redetermination* at 18 (citation omitted).

> **3. The record does not support the conclusion that a single allegedly omitted sale undermines the entirety of Hyundai's US sales reporting**

The Department contends that the alleged omission of the LPT that it concluded, was produced in Korea from the US sales database supports the application of total AFA because, as

---

[4] As this Court has recognized, the Department has used only partial AFA in numerous analogous cases, where adjustments to the gross unit price for discounts and rebates were not correctly reported. *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value and Affirmative Critical Circumstances Determination: Bottom Mount Combination Refrigerator-Freezers from Mexico*, 77 Fed. Reg. 17422 (Mar. 26, 2012), accompanying Issues and Decision Memorandum at 34-44; *Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from Belgium*, 67 Fed. Reg. 62130 (Oct. 3, 2002), accompanying Issues and Decision Memorandum at 14-15; *cf. Samsung Elecs. Co. v. United States*, 70 F. Supp. 3d 1350, 1360-63 (Ct. Int'l Trade 2015) (discussing the Department's "past practice" of applying partial AFA with respect to incorrectly-reported rebates).

a result of this alleged omission, "the record does not contain a complete and reliable U.S. sale{s} database. . . ." *Redetermination* at 13. Substantial evidence contradicts this statement.

This Court and the Department have found, on multiple occasions, that the omission of a single sale is insufficient to justify the use of total AFA. *See Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 27 C.I.T. 1059, 1061, 276 F. Supp. 2d 1371, 1374 (2003) (finding that total AFA based on the respondent's failure to report a single sale was a form of "impermissible bootstrapping" and that this single error did not justify the conclusion that the entirety of the respondent's data were unreliable). Indeed, in other cases, the Department has applied partial AFA when discovering the omission of one, or even more, US sales at verification. For example, in *Off-the-Road Tires from China*, the Department applied only partial AFA after discovering at verification that the respondent failed to report ***all US sales for an entire control number***. *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 20197 (Apr. 15, 2015), accompanying Issues and Decision Memorandum at 32-35. Likewise, in *Paper Tissue from China*, the Department discovered an unreported US sale and multiple unreported US discounts, and still concluded that total AFA was "not warranted." *Certain Tissue Paper Products from the People's Republic of China: Final Results and Final Rescission, In Part, of Antidumping Duty Administrative Review*, 72 Fed. Reg. 58642 (Oct. 16, 2007), accompanying Issues and Decision Memorandum at 33. Total AFA in this case is therefore inconsistent with both the Department's practice and this Court's precedent.

Nevertheless, the Department asserts that "the value of this omitted U.S. sale compared to the total value of the reported U.S. sales transactions" as well as "the difference of gross unit price between U.S. sales transactions" means that omitting this single sale "could lead to a

significantly inaccurate calculation of the weighted-average dumping margin for Hyundai." *Redetermination* at 12.  The Department further seeks to downplay the Court's precedent and its own practice on the grounds that the "fact patterns of each case are unique" and that, in the POR6 Review, "the number of U.S. sales is low.  Thus, the failure to report even a single sale may dramatically affect the final margin calculation." *Id.* at 18.

While the facts in each case may differ, the Department must handle similar cases in a similar way or its determination is unreasonable.  *See*, *e.g.*, *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1371 (Fed. Cir. 2011) ("agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.").  There is no evidence on the record to support the claim that omitting the sale at issue causes any "significant" inaccuracy or "dramatic" effect.  Indeed, aside from a vague, passing reference to its verification report and Hyundai's US sales database, the Department does not cite any evidence to support such purported inaccuracy or effect.  *See Redetermination* at 12 n.53.  Indeed, the Department does not claim that such inaccuracy or effect actually exists, but claims only that it "***could***" or "***may***" occur.  Such unsupported, conclusory statements are impermissible speculation.  *Hyundai Heavy Industries Co., Ltd. v. United States*, 485 F. Supp. 3d 1380, 1399 (Ct. Int'l Trade 2020) (the Department "may not base its decision on speculation") (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009).

Record evidence also contradicts the Department's conclusion.  The table below shows the value of the allegedly omitted project (*i.e.*, the LPT plus all services and charges), as well as the allegedly omitted LPT itself, alongside the aggregate amounts reported in Hyundai's US sales database in Fields GRSUPRU_TOTAL (the "total price for each transaction") and GRSUPRU_LPT (the "total sales price of the LPT for each sale"), respectively.  *Section C*

*Response* at C-42–C-43. As seen below, the allegedly omitted sale accounts for less than [    ] percent of the total US sales database:

|                     | Value of LPT   | Total US Sales Value | Percent |
|---------------------|----------------|----------------------|---------|
| LPT only            | USD [        ]⁵ | USD [        ]⁶      | [    ]% |
| Inclusive of charges| USD [        ]⁷ | USD [        ]⁸      | [    ]% |

It is not reasonable to conclude that the omission of a single sale accounting for less than [    ] percent of the US sales database would cause "a significantly inaccurate" dumping margin, particularly when the Department has the data needed to include the sale as a US sale in the dumping margin calculation.

Nor is the value of this single sale, as the Department states, reflective of a "difference of gross unit price between U.S. sales transactions." The US sales database contains [   ] SEQUs. Of these, the value of the LPT (*i.e.*, the amount reported in Field GRSUPRU_LPT) is [

            ] SEQUs; between USD [                    ] SEQUs; and [

            ] SEQUs – a relatively even distribution.⁹ At USD [           ], the allegedly omitted LPT falls in the middle category and does not, as the Department indicates, represent a "difference" in gross unit prices.

---

⁵ *See* CEP Sales Verification Exhibit VE-8 at 3-5 (showing the price of the LPT in [

                        ]); *see also id.* at 7 (purchase order from customer showing same price for LPT).

⁶ Aggregate amount of values reported in field GRSUPRU_LPT of Hyundai's US sales database. *See Large Power Transformers from the Republic of Korea: HEES's Revised Home Market and U.S. Sales Databases*, Sept. 10, 2019, at Exhibit C-1 (Revised 2) (C.R. 628/P.R. 273) ("*Final Database Submission*").

⁷ CEP Sales Verification Exhibit VE-8 at 70-71.

⁸ Aggregate amount of values reported in field GRSUPRU_TOTAL of Hyundai's US sales database. *See Final Database Submission* at Exhibit C-1 (Revised 2)

⁹ Aggregate amount of values reported in field GRSUPRU_LPT of Hyundai's US sales database. *See id.*

9

Faced with this clear record evidence, the Department pivots to speculating that "the timing and matching of the sale, sales adjustments, and Commerce's capping methodology, as well as the gross unit price together, *may* indicate a much larger margin impact." *Redetermination* at 19 (emphasis added). Yet, the necessary data to account for these supposedly insurmountable factors is on the record: the sales documents include information regarding the timing of the sale, price adjustments, and SRR. *See generally* CEP Verification VE-8.

Finally, the Department states that it was justified in applying total AFA because it could not "confirm that relevant data, such as other U.S. sales, were not omitted from Hyundai's U.S. sales database, and thus, Commerce was unable to . . . establish{} the completeness of the information requested." *Redetermination* at 12. Substantial and persuasive record evidence demonstrates that, in fact, the Department confirmed the completeness of the US sales database.

First, the Department fully reconciled Hyundai's US sales reporting to both its books and records, as well as data from US Customs and Border Protection ("CBP"). This shows the completeness of the information reviewed, and precludes the application of total AFA. Indeed, although this Court upheld the application of AFA with respect to this issue, it "***agrees that Commerce's reconciliation of HEES's U.S. sales database . . . supports HEES's position***{.}" *Remand Order* at 32 (emphasis added). In Hyundai's Korea sales verification report, the Department described in detail the steps that it took to reconcile Hyundai's US sales reporting to the company's income statement and trial balance. *See Korea Verification Report* at 13. It concluded: "We then arrived at the quantity and value of transformers entered during the POR." *Id.* Likewise, at Hyundai's cost verification, the Department reconciled the total POR costs for all POR projects. *Cost Verification Report* at 9-11.

10

These verified amounts were [      ] to the quantity reflected in data from CBP issued for purposes of respondent selection in the review.  *Hyundai Rebuttal Brief* at 14, 44 ("The Department verified HEES reported both the sales quantity and cost of production of [     ] U.S. sales, and that quantity is identical to the quantity reflected in CBP data . . . .  HEES's reported quantity is consistent with the CBP data, was verified by the Department, and was reconciled to HEES's financial statements.").  Specifically, the CBP data demonstrate that HEES imported [  ] LPTs **{CBP BPI}** into the United States during the POR.  *See Large Power Transformers from the Republic of Korea: Hyundai's Comments on Respondent Selection*, Nov. 8, 2018, at 3-5 (C.R. 3/P.R. 17).  This is the [         ] number of LPTs **{CBP BPI}** reported by Hyundai in the POR6 review and verified by the Department.  *See Large Power Transformers from the Republic of Korea:  HEES's Revised Home Market and U.S. Sales Databases*, Sept. 10, 2019, at Exhibit C-1 (Revised 2) (C.R. 628/P.R. 273).

The Department's response is to claim that the allegedly omitted sale casts doubt on the reliability of the reconciliations.  *See Redetermination* at 19.  Yet, the Department cites to nothing on the record to indicate that the reconciliation is unreliable, instead speculating that the allegedly omitted sale "raises questions" about the reconciliations.  *Id.*  Such speculation is not substantial evidence supporting the rejection of all of Hyundai's sales data.  *See, e.g., Calgon Carbon Corp. v. United States*, 487 F. Supp. 3d 1359, 1365 (Ct. Int'l Trade 2020) ("Substantial evidence must do more than create a suspicion of the existence of the fact to be established.") (citation and internal quotation marks omitted).

Second, the completeness test was one of ***eleven*** conducted by the Department at Hyundai's CEP verification.  *CEP Verification Report* at 9-12.  In every other completeness test, the Department either found "no discrepancies" or was able to successfully account for any

11

minor discrepancies. *See id.* Given that the Department was satisfied with 91% of the completeness tests conducted, substantial evidence does not support the conclusion that the Department is "unable to . . . establish{} the completeness of the information requested." *Redetermination* at 12. That same evidence belies the Department's statement that "Hyundai's failures at verification . . . suggest a pattern of unresponsiveness." *Id.* at 20 (internal quotation marks omitted). Here too, the Department engages in impermissible speculation by concluding that there may be other sales missing from Hyundai's US sales database, particularly in light of its overall findings with respect to completeness at Hyundai's CEP verification.

### 4. The combination of these issues does not justify total AFA

After discussing each issue individually, the Department states that the "combination of Hyundai's failures – in reporting service-related revenue, and its failure of the completeness test at verification – warrants the continued application of total AFA to Hyundai." *Id.* at 13 (citation omitted). Yet, even in combination, these issues do not justify the use of total AFA. The Department can (1) resolve the SRR issue using available information to apply AFA for allegedly missed SRR (as it did in the review underlying the POR2 Appeal); and (2) resolve the LPT issue ay adding the allegedly missing sale to the US sales database. **Total** AFA is unnecessary and unwarranted.

### III.   CONCLUSION

For these reasons, Hyundai respectfully requests that the Court reject the *Redetermination* with respect to the two issues upon which the Department based the continued application of total AFA, and hold that the application of total AFA to Hyundai was not supported by substantial evidence and not in accordance with law.

                                          Respectfully submitted,

                                          WHITE & CASE LLP

                                          /s/ David E. Bond
                                          David E. Bond
                                          William J. Moran
                                          Ron Kendler

                                          WHITE & CASE LLP
                                          701 Thirteenth Street, NW
                                          Washington, DC 20005
                                          (202) 626-3600

                                          Counsel to Hyundai Electric & Energy Systems Co., Ltd.

September 14, 2022

CERTIFICATE OF COMPLIANCE

I, David E. Bond, certify that the attached brief complies with the word limitation requirement, as stated in Paragraph 2(B)(1)(b) of the Court's Standard Chambers Procedures. The word count for Hyundai's Comments in Opposition to the Final Results of Redetermination Pursuant to Court Remand, as computed by the White & Case word processing system (Microsoft Word 2016), is 3,668.

                                                                                   /s/David E. Bond
                                                                                     David E. Bond