UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

HYUNDAI ELECTRIC & ENERGY SYSTEMS CO., LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

HITACHI ENERGY USA INC., and PROLEC-GE WAUKESHA, INC.,

Defendant-Intervenors.

Court No. 20-00108

**PUBLIC VERSION**
BPI removed from pages: 10, 12

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Hyundai Electric & Energy Systems Co., Ltd. (Hyundai), ECF No. 108 (Hyundai's Comments), on the final remand redetermination issued by the Department of Commerce (Commerce) pursuant to *Hyundai Electric & Energy Systems Co., Ltd., v. United States*, Court No. 20-00108, Slip Op. 22-42 (CIT May 10, 2022) (Second Remand Order). *See* Final Results of Remand Redetermination Pursuant to Court Order, dated Aug. 15, 2022, ECF No. 106 (Second Remand Redetermination).

BACKGROUND

On April 20, 2020, Commerce published the Final Results in this administrative review. *Large Power Transformers From the Republic of Korea: Final Results of Antidumping Duty*

*Administrative Review*; 2017-2018, 85 Fed. Reg. 21,827 (Dep't of Commerce Apr. 20, 2020) (Final Results) (P.R. 370) and accompanying Issues and Decision Memorandum (IDM) (P.R. 368). Commerce calculated a weighted-average dumping margin of 60.81% for Hyundai. *Id*. at 21,828. Commerce found that Hyundai failed to cooperate by not acting to the best of its ability in responding to Commerce's requests for information when it failed to provide necessary documentation of service-related revenues, failed a completeness test at verification, and inconsistently reported certain parts for home market sales. *See* IDM at 21-22. Specifically, Commerce found that Hyundai withheld necessary information needed to determine the gross unit price for each U.S. sale and to calculate an accurate dumping margin and that Hyundai failed to provide information responsive to Commerce's specific requests for documentation of service-related revenues in the Initial and First Supplemental Sales Questionnaires. *Id*. at 11-12, 14. Commerce also found, during constructed export price verification, that Hyundai failed to report at least one large power transformer (LPT) that was produced in Korea during the period of review in its U.S. sales database, therefore failing the completeness test at verification. *Id*. at 6-8. Finally, Commerce found that Hyundai failed to cooperate by not acting to the best of its ability in reporting complete and accurate information about certain parts and components, without which Commerce could not calculate accurate gross unit prices. *Id*. at 16-19. As a result, Commerce used an adverse inference when selecting from among the facts otherwise available on the record to determine this dumping margin. *Id* at 21-22.

On May 18, 2020, Hyundai initiated this appeal of Commerce's Final Results. *See* Hyundai's Summons (ECF No. 1). On October 30, 2020, the Court granted Hyundai's motion to supplement the administrative record with two additional documents. *See Hyundai Electric & Energy Systems Co., Ltd. v. United States*, Court No. 20-00108, Slip Op. 20-160 (Ct. Int'l Trade,

Nov. 9, 2020) (First Remand Order) at 2. On November 9, 2020, the Court granted the Government's request for a voluntary remand in order to address these new documents. *Id*. On March 26, 2021, Commerce issued the final results of its redetermination pursuant to the remand order. Final Results of Redetermination Pursuant to Court Remand (First Remand Redetermination) (ECF No. 55-1).

In the First Remand Redetermination, Commerce continued to find that Hyundai had failed its completeness test, because the additional documents provided by Hyundai did not establish that the omitted sale was an LPT produced in the U.S. and should not have been included in Hyundai's U.S. sales database. First Remand Redetermination at 11. Commerce also continued to find that Hyundai failed to cooperate to the best of its ability in reporting service-related revenues and reporting parts and components, and that the application of total facts available with an adverse inference was warranted. *Id*. at 20-21.

On March 9, 2022, the Court heard oral argument. *See* Second Remand Order at 4. On May 10, 2022, the Court sustained Commerce's Final Results in part, but remanded, in part, for Commerce to "reconsider or further explain" its use of adverse facts available for contested parts, and Commerce's reliance on total adverse facts available for determining Hyundai's margin. *Id*.

In the Second Remand Redetermination, Commerce reconsidered the information regarding Hyundai's reporting of contested parts and found that there was not sufficient information on the record to conclude that Hyundai had misclassified the contested parts. Second Remand Redetermination at 8. However, Commerce continued to find that Hyundai's failure to cooperate by not acting to the best of its ability in responding to Commerce's requests

for sales-related revenues and its failure to provide a complete and verifiable U.S. sales database warranted the application of total facts available with an adverse inference. *Id*. at 13.

STATEMENT OF THE ISSUES

1. Whether Commerce's determination that Hyundai's reporting of certain parts and components does not warrant the application of facts available with an adverse inference is supported by substantial evidence and otherwise in accordance with law.
2. Whether Commerce's determination that Hyundai's failure to report service-related revenues and provide a complete and verifiable U.S. sales database warrants the application of total facts available with an adverse inference is supported by substantial evidence and otherwise in accordance with law.

SUMMARY OF ARGUMENT

The Court should sustain the Second Remand Redetermination because Commerce complied with the Court's remand order in all respects and the redetermination is supported by substantial evidence. Commerce's determination that Hyundai's reporting of certain parts and components does not warrant the application of facts available with an adverse inference, but that the remaining deficiencies in Hyundai's reporting warrants the application of total facts available with an adverse inference, is supported by substantial evidence and otherwise in accordance with law.

ARGUMENT

I. Standard Of Review

In remand proceedings, the Court will sustain Commerce's antidumping determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d

1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

II. Commerce's Determination To Apply Total Facts Available With An Adverse Inference Is Supported by Substantial Evidence And In Accordance With Law

In its second remand redetermination, Commerce continued to find that the application of total facts available with an adverse inference was warranted to calculate Hyundai's antidumping duty rate. Second Remand Redetermination at 21. Commerce complied with the Court's order to "reconsider or further explain its determination to rely on total adverse facts available to determine {Hyundai's} margin." Second Remand Order at 35.

Commerce, subject to 19 U.S.C. § 1677m(d), will apply "facts otherwise available" when necessary information is not on the record, or an interested party (1) withholds information that has been requested by Commerce; (2) fails to provide such information within the deadlines established, or in the form or manner requested by Commerce, subject to subsections (c)(1) and (e) of 19 U.S.C. § 1677m; (3) significantly impedes a proceeding; or (4) provides such information, but the information cannot be verified. 19 U.S.C. §§ 1677e(a) and 1677m. Commerce may select adverse facts available when it finds an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information. 19 U.S.C. § 1677e(b). What Commerce terms "total facts available with an adverse inference" (*i.e.*, the disregarding of all reported information by a given respondent and the use of an adverse inference when selecting from among the facts otherwise available on the record to fill the gaps, within the meaning of 19 U.S.C. § 1677e) is appropriate where "pervasive and persistent deficiencies" in reported data indicates that "none of the reported data is reliable or usable." *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011); *see also Mukland, Ltd. v. United States*, 767 F.3d 1300, 1308 (Fed. Cir. 2014). Total facts available

with an adverse inference has also been upheld where a party's conduct "undermin{es} the credibility and reliability" of the overall reported data. *Papierfabrik August Koehler S.E. v. United States*, 7 F.Supp.3d 1304, 1314 (Ct. Int'l Trade 2014), *aff'd* 843 F.3d 1373, 1379 (Fed. Cir. 2018).

The Court has already sustained Commerce's use of facts available with an adverse inference regarding both Hyundai's unreported service-related revenues and failed completeness test at verification. Second Remand Order at 20, 34. Hyundai contends that these affirmed gaps in the record are insufficient to support an application of total facts available with an adverse inference. *See* Hyundai's Comments at 3. However, Commerce's application of total facts available with an adverse inference is reasonable and supported by substantial evidence.

As explained in the Issues and Decision Memorandum for the Final Results of this administrative review, Hyundai's failure to report service-related revenues alone would be sufficient to apply total facts available with an adverse inference. IDM at 14. Although Commerce no longer considers the reporting of contested parts as warranting the application of facts available with an adverse inference, Hyundai's failure to report service-related revenues in combination with Hyundai's failed completeness verification nevertheless continues to warrant the application of total facts available with an adverse inference. Second Remand Redetermination at 21. By failing to cooperate to the best of its ability in responding to Commerce's requests for information, Hyundai has failed to provide information on the record of the administrative review which is necessary to calculate an accurate dumping margin. *Id.*

First, as the Court has sustained, the record demonstrates that Hyundai failed to report its service-related revenues and provided incomplete and unreliable responses to Commerce's requests for information. *Id.* at 10-11; *see* Second Remand Order at 19-20. Without

documentation of service-related revenues, Commerce cannot determine an accurate export price that properly excludes service-related revenue nor can it properly apply its capping methodology. Second Remand Redetermination at 10. This further impacts Commerce's overall ability to calculate the dumping margin, as an accurate margin cannot be calculated without accurate export prices. *Id*. at 11.

Second, as the Court has also sustained, the record demonstrates that Hyundai failed to provide a complete and verifiable U.S. sales database on the record of the administrative review. Second Remand Order at 32. Specifically, the record demonstrates that Hyundai failed to report at least one sale of a LPT manufactured in Korea in its U.S. sales database. *Id*. at 12. Commerce found that this omitted sale could lead to an inaccurate calculation of Hyundai's weighted-average dumping margin and was unable to confirm that other U.S. sales had not been omitted. *Id*. Commerce also identified other discrepancies in the documentation provided by Hyundai. *Id*. at 20; *see* First Remand Redetermination at 11-12, 15. Hyundai's test reports do not consistently identify the manufacturer, even for different LPTs purchased by the same customer, and only provide information pertaining to testing, rather than manufacturing, locations. First Remand Redetermination at 11-12.

Finally, Hyundai's failed completeness test at verification warrants the application of total facts available with an adverse inference because this contributes to Commerce's finding of a "pattern of unresponsiveness." Second Remand Redetermination at 20. Without a successful verification confirming that the provided U.S. sales database is complete and reliable, Commerce cannot accurately calculate Hyundai's dumping margin on the record. Second Remand Redetermination at 13. Therefore, this absence of necessary information on the record, Hyundai's withholding of information related to U.S. sales, and Commerce's inability to verify

the completeness of Hyundai's U.S. sales database, when taken together, result in a situation that warrants the application of facts available. *See* 19 U.S.C. § 1677e(a). The circumstances further warrant the use of adverse inferences in applying facts available because Hyundai failed to cooperate by not acting to the best of its ability with Commerce's requests for information. *See* 19 U.S.C. § 1677e(b).

Contrary to Hyundai's contention that the missing sales-related revenue information is a "limited {and} discrete category" of information and only supports the application of partial facts available with an adverse inference, Commerce properly applied total facts available with an adverse inference. *See* Hyundai's Comments at 4. As Hyundai notes, the Federal Circuit affirmed in *Mukland* that total facts available with an adverse inference is appropriate when there are "pervasive and persistent deficiencies" in the record, and partial facts available should be used if the deficiencies are in a "discrete category of information." *Mukland, Ltd. v. United States*, 37 C.I.T. 443, 452 (2013), *aff'd* 767 F.3d 1300, 1307-08 (Fed. Cir. 2014); *see* Hyundai's Comments at 3. In fact, the Federal Circuit specifically stated that "partial facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts without undue difficulty." *Mukland, Ltd.*, 767 F.3d at 1308. This is the case here. The facts on the record demonstrate that total facts available with an adverse inference is warranted because Hyundai failed to provide information for Commerce to determine the exact amount of service-related revenue and whether the unreported service-related revenue is included or excluded from gross unit price or corresponding service-related expenses. Second Remand Redetermination at 10. Without this information on the record, Commerce cannot determine an accurate export price or apply its capping methodology, and without an accurate export price, Commerce cannot calculate an accurate dumping margin. *Id.*

Therefore, the information is not a discrete category that warrants only partial facts available with an adverse inference, but is instead "core to the antidumping analysis" and warrants total facts available with an adverse inference. *Mukland, Ltd.*, 767 F.3d at 1308.

Hyundai also contends that *ABB Inc.*, which sustained Commerce's practice of declining to treat service-related revenues as an addition to U.S. price or as a price adjustment, only supports the application of partial facts available with an adverse inference. *See* Hyundai's Comments at 4; *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1221 (Ct. Int'l Trade 2018); *see also ABB Inc. v. United States*, 437 F. Supp. 3d 1289, 1295 (Ct. Int'l Trade 2020). Specifically, Hyundai argues that missing service-related revenue information cannot justify "only partial AFA in one review, but total AFA in another." Hyundai's Comments at 4. However, as the Court notes in *ABB Inc.*, "each administrative review is a separate exercise of Commerce's authority and allows for different conclusions based on different facts in the record." *ABB Inc.*, 437 F. Supp. 3d at 1301 (citing *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2014)). In the second administrative review, at issue in the Court's 2018 and 2020 *ABB Inc.* decisions, Commerce determined that the application of partial, rather than total, facts available with an adverse inference was warranted because it was able to verify the total quantity and value of reported U.S. sales despite the missing information. Second Remand Redetermination at 17. Additionally, there were some transactions for which Commerce had service-related revenue information and was able to cap service-related revenues by service-related expenses. *See ABB Inc.*, 437 F. Supp. 3d at 1300, n.17. In contrast, here, Commerce was *not* able to verify the total quantity and value of the reported U.S. sales. Second Remand Determination at 17. Rather, Commerce was unable to verify the value of reported U.S. sales, because without Hyundai's documentation of service-related revenues Commerce could

not determine an accurate export price that excluded such revenues. *Id*. at 10-11. Further, Commerce was unable to verify the quantity of U.S. sales because Hyundai failed the completeness check of its U.S. sales database during verification. *Id*. at 11-12. Therefore, *ABB* is not applicable to the instant review, and does not undermine Commerce's determination to apply total facts available with an adverse inference.

Similarly, Hyundai's assertion that the value of the omitted sale is so small that only partial AFA is warranted fails. Hyundai Cmts. at 9. As an initial matter, Hyundai concedes that the single sale accounts for nearly [ ] of the value of Hyundai's U.S. sales during the period of review. *Id.* Reporting only [ ] sales to begin with, the omission of even one – with a value of nearly [ ] of the total U.S. sales – can handicap Commerce's analysis. Moreover, Commerce explained why the simple value of a sale does not provide the whole picture: "the value of a sale compared to the total value of U.S. sales does not indicate the impact that the sale will have on the margin calculation. The timing and matching of the sale, sales adjustments, and Commerce's capping methodology, as well as the gross unit price together, may indicate a much larger margin impact." Second Remand Redetermination at 19. Notably, though Hyundai argues that the single sale is too small to impact Commerce's analysis, it fails to cite to a *single* instance where this Court has found that omission of sales amounting to nearly [ ] of all U.S. sales cannot form the basis of total AFA.

Finally, Hyundai contends that "the omission of a single sale is insufficient to justify the use of total AFA." Hyundai's Comments at 7 (citing *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 27 C.I.T. 1059, 1061, 276 F. Supp. 2d 1371, 1374 (2003)). There are at least two reasons that this argument is not compelling here. First, in this administrative review the omission of one U.S. sale from the database has a significant impact on the dumping margin, as

Hyundai reported only [ ] sales during the period of review. Second Remand Redetermination at 12 ("Given the value of this omitted U.S. sale compared to the total value of the reported U.S. sales transactions and given the difference of gross unit price among U.S. sales transactions, we find that omission of this U.S. sale from Hyundai's U.S. sales database could lead to a significantly inaccurate calculation of the weighted-average dumping margin for Hyundai"; *see also Large Power Transformers From the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review; 2017–2018*, 84 Fed. Reg. 55,559 (Dep't of Commerce Oct. 17, 2019) (Preliminary Results) (P.R. 302) and accompanying Preliminary Decision Memorandum at 17 (PDM) (P.R. 290).

Hyundai asserts that Commerce's statement that it was "not able to verify the total quantity and value of the reported U.S. sales" such that partial AFA is not warranted "is disproven by record evidence, including explicit, contrary statements by the Department." Hyundai Cmts. at 4 (quoting *Second Remand* at 17). But this Court has already sustained Commerce's determination to apply an adverse inference because Hyundai failed the "completeness test" during verification when Commerce discovered an apparent U.S. sale not previously reported. ECF No. 98 at 34 ("the court sustains Commerce's use of adverse facts available with respect to HEES's completeness failure at verification."). Hyundai's attempt to re-litigate issues already decided by the Court should be rejected.

Though Hyundai cites to several instances where Commerce found that the omission of a single sale was not sufficient to apply total AFA (Hyundai cmts. at 8), Hyundai ignores the fact that – as Commerce explained in the remand – the small number of LPTs sold by Hyundai during the POR distinguishes those cases from this one. Second Remand Redetermination at 18. Moreover, because Hyundai failed the completeness test at verification, Commerce knows that *at*

*least* one (of a small number) of sales were omitted, but cannot be sure that more were not. Given the already-small number of U.S. sales and Hyundai's failure at verification, Commerce's determination to apply total AFA is supported by substantial evidence.

In any event, the cases to which Hyundai cites are inapposite. Hyundai cites to three cases it claims involve similar factual circumstances to this case, asserting that "the Department must handle similar cases in a similar way or its determination is unreasonable." Hyundai's Comments at 7-8. These cases are readily distinguishable and support Commerce's decision to apply total adverse facts available here.

In *Fujian Steel Co.* this Court stated that one sale in that case was not a justifiable basis for adverse facts available, but that "numerous" oversights by the respondent might justify the application of adverse facts available in that case. *See Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 276 F. Supp. 2d 1371, 1374, fn. 2 (Ct. Int'l Trade 2003) (*Fujian Steel Co.*). Indeed, in a case where subject merchandise is hand tools, although the number of sales mentioned in that case is proprietary, the quantity of sales is certainly orders of magnitude higher than the [ ] sales in this case. There, this Court found that imputing the deficiencies of one sale when there are potentially hundreds or even thousands of sales across a database is an unreasonable exercise of Commerce's discretion. The same is not true of this circumstance, with only [ ] reported sales.

Hyundai also cites to *Tires from China*, where Commerce applied apply partial adverse facts available because the respondent omitted a control number's worth of data that it should have included in its submission. *See Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 20,197 (Dept. of Commerce Apr. 15, 2015) and accompanying Issues and

Decision Memorandum at Comment 5 (*Tires from China*). Hyundai, however, ignores that the respondent in *Tires from China* alerted Commerce to the error at the outset of verification and provided all materials requested by Commerce. *Id.* Conversely, here, Hyundai's incorrect reporting was discovered *by Commerce* at verification. Hyundai did not bring the omission to Commerce's attention, and indeed maintained that it had provided accurate information. Indeed, despite the *Tires from China* respondent's attempts to mitigate the situation at verification, Commerce still applied partial facts available with an adverse inference because the respondent had been given multiple opportunities to submit the information in a timely manner. *Id*. Here, Hyundai's attempts to explain away its failures at verification by reference to factually dissimilar circumstances fails.

Finally, Hyundai's reliance on *Tissue Paper from China* is equally unconvincing. *See* Hyundai's Comments at 7 (citing *Certain Tissue Paper Products from the People's Republic of China: Final Results and Final Rescission, In Part, of Antidumping Duty Administrative Review*, 72 Fed. Reg. 58,642 (Dep't of Commerce Oct. 16, 2007), and accompanying Issues and Decision Memorandum at 33) (*Tissue Paper from China*). In *Tissue Paper from China*, the review focused on one sale, and Commerce discovered at verification that the sale had not been conducted on a commercial basis and that sales subsequent to the period of review were incorrectly reported. *Id.* at Comment 4a. While it is true that this was also a discrepancy discovered at verification, Hyundai fails to acknowledge that the missing sale in *Tissue Paper from China* was the **only** sale subject to that review, and Commerce rescinded the review after this discovery. *Id*. Indeed, Hyundai's reliance on *Tissue Paper From China* only demonstrates that one sale can, in fact, have a significant impact on a review and the calculation of the dumping margin.

Finally, Commerce's determination to apply total facts available with an adverse inference was not based solely on the omission of a single sale. First Remand Redetermination at 30. Instead, Hyundai's failure to demonstrate that it provided a complete U.S. sales database, and therefore a complete reporting of U.S. sales of subject merchandise during the period of review, was one of multiple failures by Hyundai which gave rise to Commerce's determination not to rely on any of Hyundai's information. *Id.* Commerce's determination that Hyundai's failure to report service-related revenues and it completeness test failure at verification warrants the application of total facts available with an adverse inference is supported by substantial evidence and in accordance with law.

CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Second Remand Redetermination and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/Kelly Krystyniak
KELLY KRYSTYNIAK
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

OF COUNSEL:

IAN A. McINERNEY
Attorney
Office of the Chief Counsel for Trade
Enforcement and Compliance

United States Department of Commerce

Tel: (202) 305-7571
Fax: (202 514-7965
Email: Kelly.Krystyniak@usdoj.gov

October 14, 2022

Attorneys for Defendant, United States

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 4145 words.

/s/ Kelly A. Krystyniak

October 14, 2022