Slip Op. 23-3

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI ELECTRIC & ENERGY SYSTEMS CO., LTD., <br><br>   Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>   Defendant, <br><br>and <br><br>HITACHI ENERGY USA INC. AND PROLEC-GE WAUKESHA, INC., <br><br>   Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge <br>Court No. 20-00108 |

## OPINION

[Sustaining the U.S. Department of Commerce's second remand results in the sixth administrative review of the antidumping duty order on large power transformers from the Republic of Korea.]

Dated: January 11, 2023

Ron Kendler, White & Case LLP, of Washington, DC, argued for Plaintiff.  With him on the brief were David E. Bond and William J. Moran.

Kelly Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and L. Misha Preheim, Assistant Director.  Of counsel on the brief was Ian A. McInerney, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Melissa M. Brewer, Kelley Drye & Warren LLP, of Washington, DC, argued for Defendant-Intervenors.  With her on the brief were R. Alan Luberda and David C. Smith.

Court No. 20-00108                                                                                                                                    Page 2

Barnett, Chief Judge: This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") second redetermination upon remand. *See* Final Results of Redetermination Pursuant to Ct. Remand ("Second Remand Results"), ECF No. 106-1; *see generally Hyundai Elec. & Energy Sys. Co. v. United States ("HEES II")*, 46 CIT \_\_, 578 F. Supp. 3d 1245 (2022); Confid. Final Results of Redetermination Pursuant to Ct. Remand ("First Remand Results"), ECF No. 55-1. Commerce prepared the Second Remand Results in connection with the sixth administrative review of the antidumping duty order on large power transformers ("LPT(s)") from the Republic of Korea ("Korea") for the period of review August 1, 2017, to July 31, 2018 ("the POR"). *Large Power Transformers From the Republic of Korea*, 85 Fed. Reg. 21,827 (Dep't Commerce Apr. 20, 2020) (final results of antidumping admin. review; 2017-2018) ("*Final Results*"), ECF No. 24-4, and accompanying Issues and Decision Mem., A-580-867 (Apr. 14, 2020) ("I&D Mem."), ECF No. 24-5.[1] The court's opinion in *HEES II* presents background information on this case, familiarity with which is presumed.

Plaintiff Hyundai Electric & Energy Systems Co., Ltd. ("HEES") commenced this case challenging several aspects of the *Final Results*. *See* Confid. Compl., ECF No. 13; Summons, ECF No. 1. HEES moved to supplement the administrative record with

---

[1] The administrative record for the Second Remand Results is divided into a Confidential Remand Record ("CRR"), ECF No. 107-2, and a Public Remand Record ("PRR"), ECF No. 107-3. The parties submitted joint appendices containing record documents cited in their briefs. *See* Confid. J.A., ECF No. 115; Public J.A., ECF No. 116. The court references the confidential record documents, unless otherwise specified.

two additional documents relating to Commerce's finding that a particular LPT was produced in Korea, rather than the United States, which the court granted. *See Hyundai Elec. & Energy Sys. Co. v. United States*, 44 CIT __, 477 F. Supp. 3d 1324 (2020). Defendant United States ("the Government" or "Defendant") then requested a remand of the *Final Results* to address these two additional documents, which the court also granted. *See Hyundai Elec. & Energy Sys. Co. v. United States*, Slip Op. 20-160, 2020 WL 6559158 (CIT Nov. 9, 2020).

On June 30, 2021, Commerce filed its First Remand Results. HEES moved for judgment on the agency record, challenging Commerce's determinations that HEES (1) failed to submit service-related revenue documentation, (2) incorrectly reported certain contested part(s) as non-scope merchandise, and (3) failed to report a U.S. sale of an LPT. *See* Confid. Am. Mem. of P. & A. in Supp. of Pl.'s Rule 56.2 Mot. for J. Upon the Agency R. at 1–4, ECF No. 88. HEES contended that these determinations were not supported by substantial evidence and that substantial evidence did not support the agency's application of adverse facts available ("AFA") and total AFA.[2] *See id*.

On May 10, 2022, the court remanded the First Remand Results. *HEES II*, 578 F. Supp. 3d at 1263. Relevant to this discussion, the court ordered Commerce to

---

[2] While the phrase "total AFA" is not referenced in either the statute or the agency's regulations, it can be understood, within the context of this case, to refer to Commerce's application of the "facts otherwise available" and "adverse inference" provisions of 19 U.S.C. § 1677e after finding that it could not accurately calculate a dumping margin with the information submitted by respondents in this review and could not fill in the gaps in information without undue difficulty. *See Mukand Ltd. v. United States*, 767 F.3d 1300, 1308 (Fed. Cir. 2014).

Court No. 20-00108                                                                                                          Page 4

reconsider or further explain its determinations to "use facts available with respect to HEES's reporting of the contested part(s)" and "rely on total adverse facts available to determine HEES's [dumping] margin." *Id*.  In the Second Remand Results, Commerce found that there was not "a sufficient basis on the record to determine that [HEES] misclassified [the contested parts]" and, thus, HEES's reporting of these parts was not so incomplete "such that it contribute[d] to Commerce's determination to apply total AFA to [HEES]."  Second Remand Results at 8.  However, Commerce continued to apply total AFA based on HEES's failure to correctly report service-related revenue and its failure of the completeness test at verification.  *Id.* at 9–13.

      HEES filed comments opposing the Second Remand Results.  *See* Confid. Pl.'s Cmts. in Opp'n to the Final Results of Redetermination Pursuant to Ct. Remand ("Pl.'s Opp'n Cmts."), ECF No. 109.  Defendant and Defendant-Intervenors, Hitachi Energy USA Inc. and Prolec-GE Waukesha, Inc. (together, "Defendant-Intervenors"), filed comments urging the court to sustain the Second Remand Results.  *See* Confid. Def.'s Resp. to Cmts. on Remand Redetermination ("Def.'s Resp. Cmts."), ECF No. 111; Def.-Ints.' Cmts. in Supp. of [Second Remand Results] ("Def.-Ints.' Cmts. in Supp."), ECF No. 113.[3]  The court heard oral argument on December 7, 2022.  Docket Entry, ECF No. 119.

---

[3] HEES also submitted comments in support of the Second Remand Results with respect to Commerce's determination that HEES's reporting of certain contested parts and components did not warrant the application of AFA.  *See* Pl.'s Responsive Cmts. in Supp. of the [Second Remand Results] ("Pl.'s Cmts. in Supp."), ECF No. 114.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[4] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

### DISCUSSION

When "necessary information is not available on the record," or an interested party "withholds information" requested by Commerce, "fails to provide" requested information by the submission deadlines, "significantly impedes a proceeding," or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce "shall . . . use the facts otherwise available." *Id*. § 1677e(a). Once Commerce determines that the use of facts otherwise available is warranted, if Commerce also "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id*. § 1677e(b). "Compliance with the 'best of its ability' standard is determined by assessing whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275–76 (Fed. Cir. 2012).

---

[4] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise stated.

Commerce uses total adverse facts available to determine dumping margins when "none of the reported data is reliable or usable." *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) (citation omitted); *see also Nat'l Nail Corp. v. United States*, 43 CIT __, __, 390 F. Supp. 3d 1356, 1374 (2019) (explaining that "Commerce uses 'total adverse facts available'" when it applies "adverse facts available not only to the facts pertaining to specific sales or information . . . not present on the record, but to the facts respecting all of respondents' production and sales information that the [agency] concludes is needed for an investigation or review") (citation omitted). "[U]se of partial facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts without undue difficulty." *Mukand,* 767 F.3d at 1308.

> I. **Substantial Evidence Supports Commerce's Determination that HEES's Reporting of Parts and Components Does Not Warrant Application of AFA**

In *HEES II*, the court found that Commerce failed to establish that HEES incorrectly reported certain contested parts and remanded to Commerce to "reconsider or further explain whether HEES failed to properly report the contested part(s)." 578 F. Supp. 3d at 1259. In its remand determination, Commerce concluded that it did "not have a sufficient basis on the record to determine that [HEES] misclassified [the] parts in question" and, thus, that the reporting of these parts was not a basis for applying total AFA to HEES. Second Remand Results at 8. No parties contest Commerce's determination on this issue. *See* Def.'s Resp. Cmts. at 4; Pl.'s Cmts. in Supp. at 1–2;

Def.-Ints.' Cmts. in Supp. at 2.  Commerce explained the basis for its determination on this issue and that determination complies with the court's remand order.  Accordingly, the court will sustain Commerce's determination on this issue.

## II.   Commerce's Use of Total AFA

### A.  Background

In *HEES II*, the court sustained Commerce's use of AFA with respect to HEES's failure to report service-related revenue, 578 F. Supp. 3d at 1256, and with respect to HEES's completeness failure at verification, *id*. at 1263.  However, the court remanded the *Final Results* for Commerce to reconsider or further explain its determination to use facts available with respect to HEES's reporting of certain contested parts.  *Id.* at 1259.  Because the remanded issue was one of three bases, in combination, for Commerce's decision to use total AFA, the court deferred ruling on whether substantial evidence supported Commerce's use of total AFA.  *Id*.

On remand, Commerce found that there was not a sufficient record basis to determine that HEES misclassified the contested parts.  Second Remand Results at 8.  However, Commerce found that HEES's deficient reporting of service-related revenue and failure of the completeness test at verification, together, warranted the continued application of total AFA.  *Id*. at 9.  Commerce found that it was unable to calculate an accurate dumping margin without a complete U.S. sales database and service-related revenue documentation.  *Id*.

Commerce explained that, based on the record, it was unable to determine whether the unreported service-related revenue was included in, or excluded from, the

reported gross unit prices. *Id*. at 10. Commerce was thus "unable to identify corresponding service-related expenses to implement [the agency's] normal capping policy," calculate "an accurate export price," or "calculate an accurate dumping margin." *Id*. at 10; *see also id*. at 17–18.

HEES's failure to properly report service-related revenue arose based on the company's decision to prepare its questionnaire responses and sales databases in the same manner as prior administrative reviews, notwithstanding its repeated acknowledgement that its relationship with Hyundai Corporation USA ("Hyundai USA") had materially changed. *HEES II*, 578 F. Supp. 3d at 1251–52. Specifically, HEES reported that it was no longer affiliated with Hyundai USA because of ownership changes in the company that left HEES with less than five percent ownership of Hyundai USA. *Id*. at 1252. Despite no longer being affiliated, HEES represented that it would continue to treat Hyundai USA as an affiliate for reporting purposes because there were other bases upon which the agency might find affiliation. *Id*. at 1251–52; *see also* 19 U.S.C. § 1677(33) (defining "affiliated persons"). Because HEES reported its U.S. sales database as if it remained affiliated with Hyundai USA, it did not provide Commerce with certain service-related revenue documentation, particularly between HEES and Hyundai USA, which Commerce discovered at verification.[5] *HEES II*, 578 F. Supp. 3d at 1253. In *HEES II*, the court found that substantial evidence supported

---

[5] HEES reported its U.S. sales on a constructed export price basis, and not an export price basis, and thus did not include service-related revenue documentation between it and Hyundai USA, claiming that this documentation was "intercompany, internal communications." *See HEES II*, 578 F. Supp. 3d at 1252–53 (quoting I&D Mem. At 13).

Commerce's use of AFA with respect to service-related revenue because HEES withheld this documentation that related to every U.S. sale, *id*. at 1253, despite acknowledging that the two companies were no longer affiliated and, to that end, HEES failed to cooperate to the best of its ability in responding to Commerce's requests for information. *Id*. at 1256.

On remand, Commerce also explained that HEES's failure to report the U.S. sale of an LPT that Commerce determined was made in Korea impeded the agency's ability to accurately calculate a dumping margin. Second Remand Results at 11–13. Specifically, Commerce found that the omission of this sale "could lead to a significantly inaccurate calculation of the weighted-average dumping margin for [HEES]." *Id*. at 12; *see also id*. at 18–20.

### B.  Parties' Contentions

HEES contends that Commerce's application of total AFA is not supported by substantial evidence and is contrary to law. Pl.'s Opp'n Cmts. at 3. HEES contends that the omission of service-related revenue documentation is limited to a discrete category of information and "is [not] so pervasive as to justify disregarding" other data and documents that were correctly reported and verified. *Id*. at 5. HEES also contends that Commerce has not adequately explained why total AFA is justified with respect to this omission because, in a past review of this antidumping order, Commerce applied only partial AFA with respect to missing service-related revenue information. *Id*. at 4. Finally, HEES contends that the omission of a single LPT sale does not undermine the

Court No. 20-00108                                                                                                    Page 10

entirety of its U.S. sales reporting or suggest a pattern of unresponsiveness.  *Id*. at 6–12.

Defendant and Defendant-Intervenors contend that Commerce's determination to apply total AFA is supported by substantial evidence and in accordance with law.  Def.'s Resp. Cmts. at 5; Def.-Int's Cmts. at 2.

### C. Substantial Evidence Supports Commerce's Use of Total AFA

When relying on total adverse facts available, Commerce must "examine the record and articulate a satisfactory explanation for its action."  *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).  "[U]se of partial [adverse] facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts without undue difficulty."  *Mukand*, 767 F.3d at 1308.

Here, Commerce based its determination to use total AFA on *both* HEES's failure to report service-related revenue for its U.S. sales transactions *and* its failure of the completeness test at verification.  Second Remand Results at 13, 21.  HEES attempts to disaggregate these issues by arguing that, in analogous past cases, Commerce determined to use partial AFA where a party failed to provide certain service-related revenue documentation *or* failed to report a single sale.  *See* Pl.'s Opp'n Cmts. at 4, 7–8.  The court, however, having sustained Commerce's determination to apply AFA with respect to each of these issues, must determine whether the use of total AFA based on these reporting failures in combination is supported by substantial evidence.  The court concludes that substantial evidence supports Commerce's determination.

Looking first at HEES's failure to report service-related revenue and withhold relevant documentation, Commerce explained that the absence of this information made it impossible to apply its "capping methodology" for U.S. sales transactions.[6] Second Remand Results at 10. Commerce explained that it could not "reasonably calculate an accurate dumping margin" because it could not properly "cap" service-related revenue due to the "incomplete and unreliable information" provided by HEES and the absence of record information showing whether the service-related revenue was excluded from or included in the reported gross U.S. price. *Id.* at 11. Thus, the agency determined that total AFA was warranted. *Id*.

HEES first argues that Commerce has not justified its use of total AFA here because Commerce previously applied partial AFA in the second administrative review of the antidumping order on LPTs for failure to accurately report service-related revenue. *See* Pl.'s Opp'n Cmts. at 4–5; *see also ABB Inc. v. United States*, 44 CIT __, __, 437 F. Supp. 3d 1289, 1300–1301 (2020) (sustaining Commerce's application of

---

[6] Pursuant to 19 U.S.C. § 1677a(c)(2), Commerce is required to reduce the price used to establish the export price or constructed export price by "the amount, if any, included in such price, attributable to any additional costs, charges, or expenses . . . which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States." Commerce offsets any such service-related expenses with related service-related revenues, capping those revenues at the level of the associated expenses. *See ABB, Inc. v. United States*, 41 CIT __, __, 273 F. Supp. 3d 1200, 1208 (2017). The court has upheld Commerce's practicing of "capping" service-related revenue by the associated service-related expenses. *See id.*

partial AFA where respondents did not accurately report service-related revenue).[7] Contrary to HEES's argument, Commerce has adequately explained why it is treating HEES's failure to provide service-related revenue differently than it did in the second administrative review.

In the second administrative review, Commerce received service-related revenue and expense information and the agency used this information to cap service-related revenues by service-related expenses. *See ABB Inc.*, 437 F. Supp. at 1300 & n.17. In this review, HEES chose to report its sales on a constructed export price basis despite repeatedly acknowledging that HEES and Hyundai USA were no longer affiliated. *See HEES II*, 578 F. Supp. 3d at 1251–53. As a result, HEES did not provide *any* usable service-related revenue information and failed to explain whether such revenue was already excluded from the U.S. price, thereby "imped[ing] Commerce's ability to calculate an accurate U.S. price for every sale reported in the U.S. sales database." Second Remand Results at 18. Furthermore, in the second administrative review, Commerce only used AFA with respect to HEES's service-related revenue information. *See ABB Inc.*, 437 F. Supp. 3d at 1294–95. Here, however, Commerce also found that

---

[7] Commerce's use of partial AFA for failure to accurately report service-related revenue in the second administrative review was subsequently vacated by the U.S. Court of Appeals for the Federal Circuit. *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1386 (Fed. Cir. 2022), *as modified by Hitachi Energy USA Inc. v. United States*, 2022 WL 17175134 (Fed. Cir. Nov. 23, 2022) (limiting the court's ruling to the circumstances of that case). However, this ruling related to Commerce's failure to provide parties with an opportunity to correct reporting deficiencies pursuant to 19 U.S.C. § 1677m(d), and not the distinction between use of partial and total AFA. *See id*. at 1385–86.

the use of AFA was warranted with respect to HEES's failure to report all U.S. sales. *See* Second Remand Results at 17, 19–21.

HEES also argues that the service-related revenue information it failed to provide was "limited to a discrete category of information." Pl.'s Opp'n Cmts. at 6 (emphasis omitted); *see also id.* at 5–6. However, as Commerce explained, reporting of service-related revenue was core to its analysis. *See* Second Remand Results at 10–11, 17–18. Complete and accurate U.S. sales prices are a fundamental aspect of a dumping calculation. *See Mukand*, 767 F.3d at 1307 (sustaining Commerce's use of total AFA for failure to accurately report cost information and tacitly agreeing with agency's statement that reporting of sales and cost data was "one of the most basic and significant requirements in performing [a] dumping analysis and margin calculation"). Here, service-related revenue information was vital to Commerce's ability to cap service-related revenue, calculate accurate export prices, and ultimately calculate an accurate dumping margin. *See* Second Remand Results at 10–11, 17–18. Thus, HEES's failure to report service-related revenue was not limited to a discrete category of information but was instead "vitally interconnected with other elements of the dumping determination." *See Mukand, Ltd. v. United States*, 37 CIT 443, 453 (2013).

HEES also contends that the omission of a single sale from the U.S. sales database is insufficient to justify the use of total AFA. *See* Pl.'s Opp'n Cmts. at 6–12. HEES contends that Commerce's application of total AFA based on a single omission is inconsistent with both Commerce's practice and the court's precedent, *id.* at 7–8, and record evidence does not support Commerce's claim that the omission of one sale will

Court No. 20-00108                                                                                                             Page 14

cause a significant inaccuracy in the calculation of the dumping margin, *see id*. at 8.[8] These arguments are unconvincing.

HEES again fails to appreciate that Commerce did not base its determination to use total AFA on only the omission of one sale—HEES's failure to provide service-related revenue documentation between it and Hyundai USA also contributed to Commerce's finding that total AFA was justified.[9]  Second Remand Results at 13, 21. Likewise, HEES fails to appreciate the factual difference between instances in which a single omitted sale makes up a small percentage of overall sales, and instances, such as here, in which the omitted sale makes up a more significant percentage of sales, both in total volume and total value.  *See id.* at 12 ("Given the value of this omitted U.S. sale compared to the total value of the reported U.S. sales transactions and given the difference of gross unit price among U.S. sales transactions, we find that omission of

---

[8] HEES contends that Commerce's claimed inability to establish the completeness of the U.S. sales database is not supported by substantial evidence because Commerce fully reconciled HEES's U.S. sales database.  Pl.'s Opp'n Cmts. at 10–12.  This argument is nothing more than an attempt to relitigate an issue which the court decided in *HEES II*.  In evaluating whether substantial evidence supported Commerce's decision that the unreported U.S. sale was manufactured in Korea, the court noted that Commerce's reconciliation of HEES's U.S. sales database was a point in favor of HEES's contention that the LPT in question was produced in the United States.  *HEES II*, 578 F. Supp. 3d at 1262.  However, the court ultimately determined that substantial evidence supported Commerce's determination that the LPT was not produced in the United States, but, instead, in Korea.  *Id*.  Once Commerce's finding that the LPT in question was produced in Korea is accepted, the fact that this sale avoided detection undermined Commerce's faith in the value of its completeness test for HEES's U.S. sales.  *See* Second Remand Results at 19.
[9] While HEES does also argue that the combination of its reporting failures does not justify use of total AFA, *see* Pl.'s Opp'n Cmts. at 12, this argument is just a restatement of its arguments that each issue by itself does not merit use of total AFA.

this U.S. sale . . . could lead to a significantly inaccurate calculation of the weighted-average dumping margin for [HEES].").[10]

　　　As Commerce explained, the relationship between the price of a single U.S. LPT sale to the prices of other U.S. LPT sales made during the POR "does not indicate the impact that the [single] sale [would] have on the margin calculation" because "[t]he timing and matching of the sale, sales adjustments, and Commerce's capping methodology, as well as the gross unit price together," could lead to a disproportionate impact on the dumping margin. *Id.* at 19. In other words, Commerce found no reason to assume that the omitted sale was dumped at the same level as another similarly priced U.S. sale because the dumping margin depends not simply on the price of the

---

[10] The court is not persuaded by HEES's contention that Commerce merely speculated that the missing sale would dramatically affect the calculation of the final dumping margin. *See* Pl.'s Opp'n Cmts. at 8. Commerce stated that because the number of U.S. sales made during the POR was low, "the failure to report even a single sale *may* dramatically affect the final margin calculation." Second Remand Results at 18 (emphasis added); *see also id*. at 12 ("[O]mission of this U.S. sale . . . *could* lead to a significantly inaccurate calculation of the weighted-average dumping margin for [HEES]") (emphasis added). While HEES emphasizes Commerce's choice of the words "may" and "could" to support its position that Commerce merely speculated about the effect of the omitted sale, *see* Pl.'s Opp'n Cmts. at 8, there is no dispute that the omitted sale would have at least some impact on the final dumping margin, *see* Pl.'s Opp'n Cmts. at 8–9 (arguing only that the omitted sale would not significantly alter the dumping margin); Second Remand Results at 13. That omitted sale "call[ed] into question" more than just the accuracy of HEES's sale ledger, because HEES was unable to produce documentation that it told Commerce existed for all U.S. sales. Second Remand Results at 20. Although Commerce's choice of words is phrased as conjecture about the impact of the omitted sale on the dumping margin, it is reasonable to conclude that even one omitted sale might substantially affect the final dumping margin when there are only a small number of sales made during the POR. Moreover, it is not reasonable to require Commerce to quantify the impact of the omitted sale when quantifying it would require Commerce to gather, review, confirm, and verify information that HEES failed to provide in the first instance.

Court No. 20-00108                                                                                             Page 16

U.S. sale, but the differential between that price and its normal value—and the relevant normal value may differ based upon the timing of the U.S. sale and the physical characteristics of that sale.  *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998) ("An explicit explanation is not necessary, however, where the agency's decisional path is reasonably discernible.").

The prior decisions upon which HEES relies to support its contention that a single omitted sale does not justify total AFA are inapposite.  Plaintiff cites *Fujian Machinery and Equipment Import & Export Corp. v. United States*, 27 CIT 1059, 276 F. Supp. 2d 1371 (2003), for the proposition that "total AFA based on the respondent's failure to report a single sale was a form of 'impermissible bootstrapping' and that this single error did not justify the conclusion that the entirety of the respondent's data were unreliable."  Pl.'s Opp'n Cmts. at 7.  Plaintiff fails to understand, however, that the antidumping duty order at issue there, involving heavy forged hand tools, covered four classes of merchandise and the court expressly affirmed Commerce's application of total AFA with respect to the class of merchandise in which the unreported sale occurred.  *Fujian*, 27 CIT at 1060, 276 F. Supp. 2d at 1373.  The court then addressed whether Commerce could extrapolate from the recognized failure with respect to one class to the other three classes of merchandise, and found that Commerce could not so do, without more.  *Id*. at 1061, 276 F. Supp. 2d at 1374.  The court expressly noted that "numerous 'oversights' would likely suggest a 'pattern of unresponsiveness' justifying not only the application of facts available . . ., but of AFA," *id*. at 1061 n.2, 276 F. Supp. 2d at 1374 n.2, and ultimately sustained Commerce's use of total AFA for all four

classes of merchandise based on additional reporting and verification failures, *see id.* at 1062–65, 276 F. Supp. 2d at 1375–77.

  The agency determinations cited by HEES also do not support its argument that Commerce's practice is to apply partial facts available when there is a single missing sale. *See* Pl.'s Opp'n Cmts. at 7 (citing Issues and Decision Mem. for Certain New Pneumatic Off-the-Road Tires From China ("China ORT Mem."), A-570-912, (Apr. 8, 2015), https://access.trade.gov/Resources/frn/summary/prc/2015-08673-1.pdf (last visited Jan. 11, 2023;[11] Issues and Decision Mem. for Tissue Paper From China ("China TP Mem."), A-570-894, (Oct. 9, 2007), https://access.trade.gov/Resources/frn/summary/prc/E7-20349-1.pdf (last visited Jan. 11, 2023)).[12] While Commerce did not directly address these determinations, Commerce effectively distinguished these cases when, as discussed above, the agency responded to HEES's core argument that failure to report a single U.S. sale does not undermine its reporting. Commerce explained that, here, there were so few U.S. sales made during the POR that even a single unreported sale could affect the calculation of

---

[11] In the China ORT Memorandum, Commerce applied partial AFA when a respondent failed to report all sales for an entire control number. China ORT Mem. at 32–35. However, in that proceeding, upon discovery of the omission of sales at verification, the respondent provided the information requested by Commerce *and* Commerce verified that information. China ORT Mem. at 34 (noting that although the agency did not accept the invoices provided at verification as part of the record, it reviewed the information on the invoices to ensure the veracity of the information on a summary sheet of sales that was part of the record). Here, as noted above, HEES was unable to provide the documentation it claimed existed for all U.S. sales. Second Remand Results at 20.

[12] In that proceeding Commerce applied partial AFA with respect to a missing sale and a "discount on U.S. sales found at verification." China TP Mem. at 33.

the dumping margin such that total AFA was merited. S*ee* Second Remand Results at 18. While the exact quantity of missing sales is not discussed in either of the cited determinations, HEES has not shown that Commerce was bound to use partial AFA in this case simply because it did so in the cited determinations.

## CONCLUSION

Based on the foregoing, the court will sustain Commerce's *Final Results* as amended by the Second Remand Results. Judgment will enter accordingly.

/s/     Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated:  January 11, 2023
         New York, New York